UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:                                                                Case No. 09-61845-wsd

    HUNT, RODGER,                                        Chapter 7
    HUNT, ZELDA,
                                                                      Hon. Walter Shapero
        Debtors.

_____/

## OPINION DENYING UNITED STATES TRUSTEE'S MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)(3)

The United States Trustee ("UST") has moved under 11 U.S.C. § 707(b)(3) to dismiss this chapter 7 case which was filed on July 14, 2009. This Opinion follows an evidentiary hearing which was held on December 15, 2009.

Debtors Rodger and Zelda Hunt, while married, have been living apart for more than a year. No divorce proceedings are presently pending. They have two children, ages 10 and 23, both living with Zelda Hunt with the oldest child apparently working part time. Rodger Hunt has worked for the Oak Park School District for some 19 years and Zelda Hunt has been employed as Social Worker by the Detroit Public Schools for a slightly shorter period. Line 16 of their Schedule I shows combined monthly income of $5,729.71. That includes, however, two optional retirement program monthly deductions totaling $436.76, which if added back in produces a $6,166.47 figure. Their amended Schedules J (a separate schedule for each) shows a Line 18 average monthly expense figure for Rodger Hunt of $5,186.16 and for Zelda Hunt of $3,402 (the latter figure includes her apartment monthly rental of $1,100). The figure for Rodger Hunt includes both a $3,003.16 per month payment on a fairly recent ARM mortgage, including taxes and insurance, on the residence he is occupying and a credit card debt payment of $480.[1] His expenses without those two payments would amount to $1,703. The $3,402 and

---

[1] The mortgage payment was first set forth in an amended Schedule J, there being no figure for a rent or mortgage payment on the originally filed schedule.

$1,703 combine for a total of $5,105.10, which when subtracted from the indicated calculated income figure of $6,166.47, produces a monthly surplus of $1061.37.

The primary precipitating factors in the bankruptcy filing were an increase of some 80% or so in the monthly payment on the mortgage within a recent and relatively short period of time, and the added living costs of two households, without any corresponding increases in income. Schedule A states the value of the residence is $96,051 and the mortgage balance is $244,391. Rodger Hunt intends to move out of and surrender the residence and indeed on October 23, 2009 an order was entered lifting the stay in reference to that property. Rodger testified that he has not yet determined where he might live or what such alternate housing might cost him, e.g., live with a friend at no cost, obtain an apartment at an unspecified cost, or attempt something else. Schedule F shows unsecured debt of $77,857, not including any possible deficiency arising from the foreclosure of the residential mortgage.

In this Court's view, the UST's motion should be evaluated within a framework that essentially combines the appropriately adjusted income and expense figures of the two debtors. Initially, as noted, this analysis produces a monthly income excess figure of approximately $1,000. However, that is a number that does not take into account two important and realistic considerations, i.e.: (a) a cost of housing figure for Rodger, and (b) some downward adjustment of Zelda Hunt's current income arising from the current Detroit School System labor negotiations. The UST argues that absent more definitive evidence than Rodger's vague testimony on his housing costs, the Court should look at his amended schedule J, which shows a $3,000 plus figure for housing costs. Based on that, the UST argues that Debtors situation is presently such that this chapter 7 case filing is premature and should be dismissed for Rodger's own good (at least until he more definitively makes up his mind about his housing situation), so that in the future he would not be faced with having just received a discharge in this case and thus being unable to file again even though the situation will clearly remain such as would require bankruptcy relief. In this Court's view, that choice should be the Debtors'. The analysis and record here requires and permits calculation of some housing figure. The Court believes that between the Internal Revenue Service Allowable Living Expense guidelines used for certain Bankruptcy purposes and what Zelda Hunt is apparently in fact now paying for

her rental, one can utilize a $1,000 or so monthly housing expense figure for Rodger Hunt, at least for purposes of deciding the pending motion. Using that number, there would be no surplus available to fund a chapter 13 plan, if that were for instance the issue before the Court. Furthermore, any possible surplus would also be lessened by what the Court sees as a likely reduction of Zelda Hunt's monthly income by reason of either a ratified collective bargaining settlement involving the Detroit Public Schools or an involuntary pay reduction by reason of a ratification turn down.[2]

In cases such as this, the inquiry is into the totality of circumstances and involves any number of non-exclusive factors which the courts have enumerated from time to time. *See*, *e.g.*, *In re Krohn*, 886 F.2d 123 (6th Cir. 1989); *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429 (6th Cir. 2004); *In re Beckerman*, 381 B.R. 841 (Bankr. E.D. Mich. 2008). An important factor is whether or not the debtors can pay their debts out of future earnings, i.e., have sufficient disposable income to fund a hypothetical chapter 13 plan. Often the argument is that if the answer to that question is yes, insofar as the UST is concerned, that alone is a sufficient basis on which to grant the motion. In this case the Court concludes, given the recited facts and the Court's conclusion as to the realistic circumstances of this two household situation that Debtors are not in a position to meaningfully fund a chapter 13 plan. Schedules J do not lend themselves to a conclusion that expenses can be significantly reduced and indeed the UST does not argue such. While Debtors enjoy apparently stable sources of income and are otherwise eligible for chapter 13 relief, the other facts the courts have articulated do not support the relief sought in the motion. Essentially, the UST argues that the matter of the housing cost for Rodger Hunt is so nebulous and such an important item that the required showing of neediness has yet to be shown. The Court disagrees. The indicated range of potential housing cost that the parties' joint incomes can support, and the relationship between that number and other facts which might affect how much he might have available to spend on it, simply do not present a basis upon which it can be said that the UST has borne its burden of proof. Debtors cannot be seen by this Court as abusing the chapter 7 process to the point where its relief should be denied them. Rather, they appear to be trying to deal

---

[2] As of the time of this writing, it appears the settlement has now been ratified.

with a situation, while partly of their own making, which chapter 7 was designed to address.

Accordingly, the UST's motion is denied. The Court will enter an appropriate order.
.
**Signed on December 22, 2009**

             **_/s/ Walter Shapero_**
             **Walter Shapero**
             **United States Bankruptcy Judge**